Can you call the next case. Case number 14-35-37. Thank you. Good morning counsel. You can just step forward. I'd ask that you keep your voices up loud and clear when you're talking because of course that's not a microphone. The epilogue has 15 minutes. You should reserve a couple of minutes if you want for rebuttal. And if we don't ask a lot of questions, it's because we've read your briefs, we've read the record and we just want to hear your argument. All right. Emily Hartman at the State Appellate Defender. I represent Jovan Scott. Good morning, your honors. It's Assistant State's Attorney Iris Ferrosi on behalf of the people. I'm sorry. Counsel, state your name again because I don't see it on the brief. Emily Hartman. I took over the reply brief stage. My name is on the reply brief. All right. Thank you. Good morning. This is an appeal from the second stage post-conviction dismissal of Jovan Scott's petition. This case involves the application of the second stage standard to Scott's claims of ineffective assistance of counsel. At the second stage of post-conviction proceedings, this court's review is de novo, the allegations in the petition are taken as true, and the petition must make a substantial showing of a constitutional violation. Scott alleged that his counsel was ineffective for misadvising him during plea negotiations which caused him to reject the state's offer. The petition needs to make a substantial showing that counsel's performance was deficient. The petition alleged counsel told him not to take the offer and that the range of sentencing was six to 30 years, not the actual range of 12 to 60, and that he wasn't going to get 30 years because he didn't have a background. Counsel did not tell him the sentences were mandatory consecutive. In fact, she said they were concurrent. And she told him that the one act on crime rule meant that he would only be sentenced on one count. The petition, the allegations at this point, this court doesn't make credibility determinations. However, Scott's use of the phrase one act on crime, which is a term of art from Illinois law, does support his claim because a criminal defendant wouldn't otherwise know that term. Under the reasoning of Peter B. Curry, because consecutive sentences here were mandatory due to the undisputed severe bodily injury to the victim, Mr. Johnson, this is a substantial showing of deficient performance. The petition also needs to show prejudice. The first part of that is that it needs to show that the defendant would have taken the offer, but for counsel's bad advice. So here, Scott said exactly that. He said, but for the misrepresentation, he would have taken the offer. Did he say he would have or he probably would have? He would have. That's on page 55 of the post-conviction common law record. He said, but for the misrepresentation, he would have taken the offer. In order to save his life, irregardless of his innocence. And it's quoted on page 5 of the reply brief too. In addition, Scott as well as Celeste Randolph and Willie Scott stated that he intended to take the offer on the next court date. Scott's petition also included eight names along with six phone numbers of other people that would have been able to be called to testify about the existence of the offer and his intent to take it. The second thing the petition needs to show is the offer was somehow less severe than what the defendant was ultimately convicted and sentenced to. Here, he received 30 years and the offer was 12, so that's a more severe sentence. And lastly, the petition needs to make a substantial showing that there is a reasonable probability that the prosecution would not have withdrawn the order and that the court would have accepted the order. This comes from the United States Supreme Court's cases, Fry and Lassler. And in five, the Supreme Court explained this doesn't need to be satisfied by outside evidence. They said, normally, this is something that's satisfied by an objective assessment of the facts of the case. There's no reason to think a prosecution, prosecutor would withdraw an offer or the court wouldn't accept because, and I'll quote, prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. The court continued, in most instances, it should not be difficult to make an objective assessment as to whether a particular fact or intervening circumstance would suffice in the normal course to cause prosecutorial withdrawal or judicial non-approval of a plea bargain. So that was from Fry. And in Lassler, the Supreme Court held that the defendant there did show a reasonable probability that he and the court would have accepted the offer. What's the showing here? We have someone who was shot in the spine and is in a wheelchair in a nursing home for the rest of their life. What is the showing there? I was 26 in California for 18 years, so I'm saying what is the showing that I would have taken a 12-year plea on someone who is now handicapped for the rest of their life and living in a nursing home? So the first thing is the Supreme Court's application of what it, you know, at a point after hearing, a showing is made by a plea that can legally be accepted by the trial court. So a legal plea is one that there's a reasonable probability the trial court would accept. At 26 in California, certainly the prosecutors are experienced. As are the judges. And an experienced prosecutor who made, if this offer was made, an experienced prosecutor isn't going to make an offer that a reasonable judge wouldn't accept. It's the 12-year sentence at 85%. It's the minimum to the charge of offenses, but it was not the minimum. But there are two offenses, and they're supposed to be consecutive. Certainly, but the state could have offered a lower plea. This isn't the lowest plea that could have been offered. They could have dropped some charges, reduced the charges, or dropped the factor that made it consecutive from the factual basis. But ultimately, the facts about how severe the injuries were, if the state offered 12 years and agreed to it, those facts aren't going to be before the court. The in-fine laughs are those... Of course they are. The... No, no. Of course they are. If an offer is made by the state, you have to have a 402 conference with the judge. Unless you're blindly and you're insane, you're going to have a conference with the judge to determine if the judge will accept the offer. The judge will want to know all of the facts. That's what happens in a plea bargain. Forgive me, Your Honor. I misspoke. Okay. I meant that the judge would not have the arguments of aggravation and the extensive facts from a full trial. But, of course, the details would be... Okay. And, of course, you do. In a 402 conference, you get the person's entire criminal history, their education, their family, their whole background. The judge is supposed to get in a 402 conference everything to make them determine what sentence they would impose. Certainly. This case involved a credibility contest with a victim who admitted that he believed that Mr. Scott had set him up and he had a motive to lie. This was not the best case, certainly, in the world against Mr. Scott, and the state could have lost. So one of the factors that the Supreme Court has noted goes into the prosecution's plea offers is their chance of success. And, in fact, if you look at prior and last, they go into a lot of depth about the extent to which the severity of the ultimate sentence should be very different from the plea offer. Because this is a point of plea bargaining to offer a much lower sentence to encourage the defendant to plead to save resources. The Supreme Court has gone so far as to say that Congress enacts very high maximums in order to encourage plea bargaining. So, certainly, 12 years of 85 percent, while this was a serious injury, there could have been a lower plea. The record does not have any other facts to show that if this offer was made, nothing happened in between that point that we know of. We can say that we don't really know exactly when this offer was made. Well, we know that when Willie Scott says that Scott told him that the offer was made a month before the August trial. So there's that. But, certainly, an evidence you're hearing would be the place to resolve the details of that, as well as whether there were any intervening circumstances. And an example of the type of intervening circumstance the Supreme Court mentions is the prosecution's strength of its case that they got other witnesses in the intervening time period. That might be the type of thing that might cause them to withdraw the offer. So that would be something that a prosecution could call witnesses to support at a hearing. But you believe at this point the petition makes a substantial, or whatever the standard is, substantial showing at the second stage. that the court would have accepted the offer. And at the second stage, it is not fair to expect a criminal defendant to have an affidavit from the judge or the prosecutor in the petition saying, you know, I remember this case. I would have accepted it or not. If the judge wasn't going to accept it, given the facts of this case, an evidence you're hearing would be the place for that. And, in fact, it could go in front of a different judge so that the judge that heard the trial could testify if the prosecution wanted to call him. And at the hearing and the post-conviction proceedings where the court did say that there couldn't have possibly been an offer because the state doesn't make offers to the charged defense that only makes reduced charge offers in his courtroom, those statements are not part of the record. And under People v. Sanders, they're not admissible. Certainly, if the court was testifying or speaking about a blanket policy in his courtroom, that's something that would be counsel would want to cross-examine him on at an evidentiary hearing about some of the statistics for guilty pleas in that courtroom. But ultimately, we are at the second stage. The allegations in the petition taken is true. This is a legal plea. The prosecution, if Scott can establish, taken as true, he's established that the offer was made and the state isn't going to make an offer that's not going to be accepted. They are experienced. I'm so sorry. I didn't mean to interrupt you. That argument is just driving me insane, that if the state's attorney made an offer, the judge is going to accept it. I mean, it happens every single day. The state makes an offer. The judge will undercut the offer the state made or they'll say, I'm not going to take that. I want a higher offer or just maybe one year above the offer that the state offered. I mean, it happens every day. Please excuse me, Your Honor. Sometimes the standard at second stage with the ineffective assistance counsel can get a little wordy. I was speaking of a substantial showing of a reasonable probability. I didn't mean to suggest that the judges always accept offers. So we're looking for a reasonable probability most offers are accepted. Reasonable probability, it's not even past 50%. It's just sort of enough to undermine confidence in the outcome. Some offers certainly are accepted, and we just are at a point where we need a substantial showing of that. A hearing, the state could call prosecutors and the trial judge to testify, certainly, about, and defense could introduce data about the police in that courtroom. All of this could be brought in to be litigated at a hearing. The allegations of the petition when taken as true do make a substantial showing that the counsel misadvised Scott about the sentencing range, which caused him to reject the state's plea offer. Mr. Scott's second claim of ineffective assistance of counsel for not investigating Brandon Lewis, it boils down to when allegations in Brandon Lewis' affidavit are taken as true, they support the theory of the defense and collaborate it. Lewis said the shooter was not Scott, which is the same as the defense at trial. Scott said counsel did not talk to Lewis, but that he told her about China, and that China was with Lewis at the time, and she didn't talk to China. Unless Radcliffe says she told counsel about Lewis. But Lewis doesn't say a word about Radcliffe. Radcliffe is his sister. His affidavit doesn't mention Radcliffe. Didn't she say she talked to him? Radcliffe said she talked to Lewis. Right, and Lewis doesn't mention. And he doesn't mention that he got the phone number of the lawyer, and he doesn't mention that he called the lawyer and left all these messages, and the lawyer never responded. No, this is a failure to investigate claim. So the claim is that counsel was on notice about that she should have found Lewis. Certainly she was on notice about China. She should have talked to China, who may or may not have known about Lewis. They were in the same house. And then if she talked to China and if China knew about Lewis, then the lawyer would have contacted Lewis. So as Radcliffe could explain, her affidavit does say she told counsel about Lewis. So Lewis doesn't put it in his affidavit. But if this is incomplete, we have Radcliffe's affidavit, and Radcliffe could explain. I spoke directly to him. It's funny that Radcliffe doesn't even say she told the defendant, her brother, about Lewis. I just thought of that. She only says she tells the lawyer about Lewis. So she knows about Lewis, but not her brother. She may have assumed that that was implicit because they're brother and sister. But this is ineffective assistance of counsel. So she told counsel. And it is a failure to investigate. So we do know that counsel was on notice of China and didn't talk to her. His investigator tried to talk to her. But she knew that China was scared and would only talk to an attorney. How did she know that? Scott told her. That China would only talk to her? Yes. That's in your affidavit? It is in, I guess. I want to know because I don't remember reading this anywhere. Yes. Okay. Yes. I have a note too. Okay. And at the second stage, this case is just like Peoples v. Tate. A second stage case where, just like this case, the defense was to attack the witnesses who identified the defendant as the shooter at trial. Both cases involved affidavits from people who said that the defendant wasn't the shooter. The affidavits must be taken as true. And since those witnesses would have corroborated the theory of defense, there's no apparent strategic reason not to call them. So accordingly, just like Tate, this court should remand for an evidentiary hearing. Your brief says that, back to the China only talking to counsel, that Scott gave counsel information to locate China and told China his lawyer would reach out to her. China told Scott to tell Breen that she would only talk to Breen directly because she feared for her life. So we know that that was relayed. So we know China told Scott. We know Scott told Breen, the attorney, trial counsel, about China and her fear of, and so how she would only talk to an attorney. So he alleges that and we take that as true. He alleges in his petition, although when you're talking about the affidavits, you don't link that back. That Scott told Breen. I apologize. Because in addition, Radcliffe said she directly told Breen. Taking it as true, certainly that should be resolved at a hearing. Breen should have investigated Lewis, the extent to which she was on notice of Lewis. She may be one of the state's witnesses. She may be a defense witness. But this is a second-stage claim where there is a witness that saw the shooting and says it wasn't Scott and that is consistent with the theory of defense, which was that it was not him. This court has any other questions? I'll reserve the rest of my time for final. Thank you, counsel. Good morning, Your Honors. May I please the court? My name is Assistant State's Attorney Iris Ferrosi and I'm here on behalf of the people. Your Honors, the defendant has failed to make a substantial showing of any constitutional violation regarding his plea or his attorney failing to secure witnesses. Regarding the plea, there's actually just all he really has is his self-serving affidavit about the plea. The two other affidavits that he provides just are hearsay statements by the defendant saying, I was going to take the plea. They don't add anything. That three amount to a self-serving statement by defendant. Curry and Hill both hold or both stated in their holdings that more is needed than just a self-serving affidavit. In Curry, there was an affidavit plus a colloquy by the trial counsel stating that they did not know that sex counts were automatically mandatorily consecutive to each other, saying that on the record plus an affidavit. And in Hill, there was nothing else. There was just the self-serving affidavit. And in Hill, the Supreme Court said that was not enough. Here, there was nothing to corroborate defendant's claim. He doesn't say anything. None of the affidavits say anything about not being told about maximum sentences. Both of the affidavits, if you read them, state that he was told by his counsel not to take the plea because counsel believed that one of the victims was about to pass away. This was actually solid advice by counsel, assuming it happened, because had the defendant pled guilty to the attempt murder charges, he would probably have been sworn to the facts. And if the victim passed away, they would probably be used against him in a murder trial. So that would have been sound advice. But before we even get there, throughout the record, defendant constantly indicates his desire for trial. He asserted an alibi defense, an allocution before he was sentenced. He said he was innocent. And he overall denied committing any crimes. Our Supreme Court said in Hill that that is an indication that there was never, if there was a plea offer, that the defendant was not going to take it because he maintained his innocence. You take this plus defendant's affidavit, which he attaches to his PC petition. Justice Lampkin, you asked counsel about this. He said, quote, I probably would have taken a 12-year plea deal to avoid a life sentence. If I had a chance again, I probably would seriously consider it. This is buyer's remorse. This is not a substantial showing of a constitutional violation. This is defendant looking back, assuming there was a plea offer, that he would have taken it. He must show a reasonable probability that he would have accepted the plea offer had he received effective assistance. Now, if we look, if we assume there was a plea offer, and that's, again, ignoring what the trial court said, that the state doesn't make offers, they make recommendations, and all offers go through the court. And therefore, there's nothing in the record to indicate that any offers went through the court. So the trial court said there wasn't one. But let's assume there was. There's nothing in counsel's advice that was a misrepresentation. If you look at attempt murder, there has to be a finding of fact of severe bodily injury. It is not a given that these two charges are consecutive unless the court finds severe bodily injury. Now, in this case, with a victim who has been shot and paralyzed in a nursing home, you would guess that there would be severe bodily injury. But as a prosecutor, you don't know until there's an actual finding of severe bodily injury if you have consecutive sentences. So that was not a misrepresentation. And like I said... Oh, excuse me. Also, the counsel told him he may not receive a high sentence because of his lack of background. But it's also not a misrepresentation. That's a reasonable deduction from this counsel, that if he has no criminal background, that he may receive a lower end of the sentence. And like I said, if he pled guilty and the victim died, that could be used against him in a murder trial if he was sworn to the facts. And most likely the prosecutor would have sworn him to the facts if everybody believed that the victim was going to die. So all of these things... Nothing that makes a substantial showing. And counsel brings up Sanders, where the Supreme Court said that the trial court erred when it looked at a previous PC hearing and making its determination on a later PC, second stage determination. Let me say that again. The second stage determination was made on a previous third stage hearing with the same defendant that the same judge sat on and said, I don't remember that defendant. He's a total liar. I don't believe anything he says. And the court said, okay, well, that was improper. However, this is a de novo review, and you don't... There's an error, but still, this defendant did not make a substantial showing of a constitutional violation. So the trial court should have said that, but this court can look at it de novo. The trial court should not have said it. Should not have. In this case. In the other case where the judge said, I don't remember that defendant, and he's a liar. But what about here? Here, the judge did not... was not making a credibility determination about the defendant based on a prior or anything. The judge was just saying, in my courtroom, all the authors go through me. Well, but what are we to do with that? Well... It wasn't a hearing. It wasn't an evidentiary hearing. It wasn't an evidentiary hearing. He stated it in the beginning before he even knew what this case was about. It's when counsel first... PC counsel was first appointed. So you can either take that as evidence that there was no plea offer, or... How do I take that as evidence? You can not. Ignore it. You can ignore it. But either way, the defendant hasn't made a substantial showing, same as the defendant in Sanders, the case the defendant relies on. So without... with the self-serving affidavit and nothing else, which is what we have here, defendant's own affidavit with his buyer's remorse, and not showing any misrepresentations by counsel on this plea, defendant's claims fail. And likewise, with the locating the witness, there's nothing to indicate that this defendant knew... excuse me, that the trial counsel knew of Brandon Lewis. So we have defendant's affidavit where he never states he knew of Brandon Lewis, or they told counsel about Brandon Lewis. He has an affidavit about China that he knew of China, but not that... anything further. And doesn't make a specific allegation in this post-conviction petition about China, that this counsel didn't research it enough. Does he... I don't... the question I asked... Yes. ...the appellant's attorney. Did the defendant in his affidavit say he told trial counsel that China would only talk to him? I don't remember that. He... yes. He has three... he had three affidavits that he attached. One of them was about China, and one affidavit was about Brandon Lewis, that he can't... but not that he knew of Brandon Lewis, just that it was ineffective for this counsel not to locate Brandon Lewis. But if you look at Brandon Lewis's affidavit, first he says he was reacquainted, those are his words, with defendant in Stateville Prison, which means they didn't talk until defendant was already convicted. Was never contacted by anyone, were his words in his affidavit, which completely contradicts Celeste Radcliffe's affidavit, which she says she spoke with Brandon Lewis, I don't know when, it doesn't say, but that she gave Lewis counsel's number and that Lewis contacted counsel. So those kind of contradict each other because Lewis never says anything about that. Also, if you look at the record, where PC counsel states that he talked to trial counsel and that trial counsel didn't know about Lewis, but she looked for China and couldn't locate China with her investigator, and that PC counsel says that not even defendant knew of Brandon Lewis, says that on the record. And what are we to do with those statements? I mean, I think it sheds light when you're looking at these affidavits and it corroborates what is in the affidavit. Or not in the affidavit. Right, well, Brandon Lewis says, like, I was reacquainted in Stateville and no one contacted me, which was what the counsel's saying. And if you also look at the record, there are at least five or six court dates where counsel appears on the record and asks for continuance to look for more witnesses. She never says an occurrence witness or an eyewitness, always an alibi witness, but there's... The defendant called Lewis an alibi witness. An alibi witness. So she's really an eyewitness. I mean, Lewis is really an eyewitness. But nevertheless, it's clear from the record that this counsel was given names and she was searching for these people and kept asking for continuances. And notably, on one of the court dates, it would be February 9, 2009, defendant complained to the judge that discovery was taking too long. Again, indicating this is deciding to go to trial. It's taking too long. Why are there any continuances? I think all these things can be considered by the court in a de novo review, and when you break it down, all you have is a statement by Celeste Radcliffe that she notified counsel, which I don't know... I mean, that could mean anything. But it's clear counsel did not know of Brandon Lewis. And if counsel didn't know about Brandon Lewis, she can't be ineffective for not knowing. And I think defendant, that doesn't make any specific allegations about China, of her not being able to find China, and kind of tries to backdoor with, well, had she found China, she would have found Brandon Lewis. But again, counsel is just held to the standard of reasonable assistance. And without it, first of all, she was not going to find Brandon Lewis. So for these reasons, Your Honors, we ask that you consider my arguments in my brief, my arguments today here before you, and that you affirm the trial court's dismissal of defendant's post-conviction petition. Thank you. Thank you very much. Justice Lampkin, you mentioned you had a question for me. You mentioned you had a question for the appellant. The question I had asked earlier, is if the defendant's affidavit said he conveyed to trial counsel that China would only talk to the defense lawyer. So, page 99 through 100 of the defense law, that post-conviction common law record, and it's on page 10 of the opening brief in this case, where it's summarized. That's where the affidavit can be found. And then sort of all of the information about China. Yeah. My recollection is that the defendant's affidavit says China told him she would not speak with trial counsel, but it doesn't say that he told that information to trial counsel, that China would only talk to the trial counsel. That's my question. If I were trial counsel, no, she would not talk to him unless he was told that. It would be reasonable for him to send his investigator. That was my question. I don't see it on page 10 of your brief. Of the opening brief, it's the paragraph that starts months before trial. That's the summary of it. That's what I was quoting to you earlier, and I don't see it. That's the information I have today. I can check my notes. I don't remember that at all. My recollection is not that good. The State's argument rests on making credibility determinations at the second stage. The emphasis on self-serving, the fact that the defendant's statement is self-serving, first, it is corroborated, as incurred, by Willie Scott's affidavit. The State is saying those are hearsay. They didn't hear this supposed offer. The defendant told them, the lawyer gave me an offer. He advised me. I mean, isn't that hearsay? It's an evidentiary hearing. The question would be ineffective assistance of counsel. So the issue is, was there an offer? Was he going to take it? So it's his state of mind, and they can say that he told them he was going to take it, because we do need to find out, to satisfy the ineffective assistance of counsel, not at a trial of guilt or innocence, to find out whether counsel is ineffective at that kind of hearing. Certainly, if one of the questions is, would the defendant have taken the offer, the fact that he told somebody he would, it's admissible, and certainly to rebut any allegations that he wouldn't have taken it. I mean, if only, if his statement alone is self-serving and isn't enough, and he told other people, they'd have to be able to let that in. Otherwise, he could never make it. Why would they have to be able to let that in? Because otherwise he would never make it. There was a defense lawyer for him. I mean, he could have gotten the affidavit of the defense lawyer that the offer was made, the State's attorney that the offer was made. Typically, the attorney, trial counsel, it's difficult for a defendant to get trial counsel's affidavit in a post-conviction case because counsel has an interest in protecting the reputation. Oh, God, no. I have seen so many cases where defense lawyers have given their affidavit. I've had affidavits where the defense lawyer says, I'm incompetent. I was ineffective. I mean, this is not saying I'm ineffective. Did the State give you an offer of 12 or 9? Also, did you not understand about the sentencing? Well, the offer was disbursed. Did he even get the 12-year offer? Yes. So some lawyers do give affidavits and admit their incompetence, but not all lawyers do, and it does make some lawyers want to protect their reputation and won't give it. She may be the State's witness, depending on, but certainly at this point, he says that the offer was made, and his allegations should be taken as true. The self-serving, if a defendant's statement alone is not enough to meet stricter and prejudiced standard, corroborating evidence in the form of others that he told that he intended to take it, would show that he intended to take it. In Hale, where the State mentions the defendant's desire for trial, Hale had an evidentiary hearing, and at that hearing, defense counsel testified that in private, the defendant told him that he had a desire for trial. That's where that comes from. Here, the State's argument is predicated on the desire for trial being the defense counsel, whose ineffectiveness is alleged here, defending the case. To be the same as Hale, to make that finding, we need an evidentiary hearing, as Hale had. I count you to get about a minute. Of course. Of course. The second claim is a failure to investigate claim. Counsel can be ineffective for not knowing about Lewis if she didn't investigate Lewis. So the petition makes a substantial showing that she should have found Lewis. Not all effective assistance claims require that counsel know of the witness. Counsel can be ineffective for not investigating and not finding a witness that she should have found. The standard, contrary to what the State said, the standard applicable to defense counsel was strickland. It was a trial, not reasonable assistance. That's the post-conviction standard. We're talking about trial counsel. If there are no more questions, for the reasons stated today and in Mr. Scott's briefing, we request that this Court remand his case for an evidentiary hearing. Thank you. Thank you, counsel. Oh, I'm sorry. I was still waiting for the next case. I didn't say bye. We will read the briefs, reread the records, and we will render our decision. Thank you so much. Thank you.